## THE RUSSELL NO. 3.

District Court, E. D. New York.
May 14, 1934.

Loomis & Ruebush, of New York City, for libelant.

Alexander, Ash & Jones, of New York City, for claimant.

INCH, District Judge.

Three motions are before me for decision, and I see no reason why they cannot be disposed of in one opinion, with the entry, of course, of separate orders.

The first motion is made by libelant for an order directing claimant to file a new

stipulation for value signed by a responsible surety.

This suit was commenced by libelant on or about December 11, 1925, on which date the libel was filed.

The libelant claimed damages in the sum of $12,500. On December 16, 1925, the claimant filed a stipulation for value for the above sum, executed by the claimant and the Independence Indemnity Company, as surety. This surety has ceased to exist.

Claimant therefore must file a new stipulation for value in conformity with the admiralty law.

Because of certain things that have happened in the suit, which include a report by a commissioner, not as yet confirmed, the amount of the new stipulation is contested. Libelant claims that the stipulation should now be $19,000, while the claimant asserts that the only damage sustained was less than $100, as reported by the commissioner.

In my opinion all that should be required of claimant is to restore the stipulation in the sum of $12,500. This should be done before any further steps are taken in the suit for the reason that, regardless of the determination of the issues in the lower court, either party is entitled to another trial in the higher court, and, during this time, the libelant is entitled to the protection the same as it would be from and after the beginning of the suit. Consequently the situation is the same as where a claimant is required to file such a stipulation in order to obtain the waiver of process, with this difference, that such service has already been avoided by what is now conceded to be an insufficient stipulation.

Claimant should file this new stipulation within ten days from the entry of the order to be entered hereon, unless such time is duly extended by the court, upon the proper facts and upon notice to libelant. The order should be settled on notice.

The second motion is made by claimant, and by it is presented a somewhat unusual situation.

■ Claimant seeks to be relieved by this court from admissions in its answer and from the effect of an interlocutory decree, entered by consent, by which decree the commissioner was appointed.

Before deciding the motion, a brief statement of the facts, as they appear to me from the entire record of the case, should be made.

The libel was filed December 11, 1925. The suit was brought against a tug owned by claimant. The cause of action set forth is that libelant's steamship was collided with by a floating elevator in tow of said tug, and that, due to the negligence of those in charge of this tug, the tow collided with the stern and propeller of the steamship, seriously damaging her.

On April 1, 1926, the answer of the claimant was filed, and in this answer, in addition to denials, occurs this admission, contained in claimant's statement of how the accident happened: "The Russell No. 3, (the tug in question) drew the grain elevator clear of the 'Isonzo II' (the steamship in question) but was unable, owing to the shortness of time and space, to prevent her from coming into contact with one of her unprotected propeller blades, with the result that some part of said propeller blade was clipped or damaged." This answer was verified by the claimant March 29, 1926.

Subsequently, and on March 27, 1928, a consent interlocutory decree was presented to Judge Campbell, and signed by him, by which, among other things, it was ordered, adjudged and decreed that libelant recover of and from the tug and her claimant "the damages sustained by the libellant by reason of the matters and things alleged in the libel," and it was further ordered, "that it be referred to Louis R. Bick, Commissioner, to ascertain and compute the amount of the libellant's damage, and to report, etc."

Thus the matter rested until on or about May 16, 1933, when the parties appeared before Mr. Bick as such commissioner. The commissioner has now filed his report in which he finds that there was no collision by the tow with the propeller and that no damage was done by reason thereof.

This, of course, is directly contrary to the admission in the answer and the consent decree above mentioned by which the parties apparently agreed that there was such injury.

Claimant, after reading this report of the commissioner, now seeks to have the court remove the admission from its answer and amend the consent decree accordingly. Libelant opposes the granting of such relief, and in my opinion rightly so.

■ In the first place parties are entitled to rely upon the pleadings, and, where a considerable period of time, in this case eight years, has elapsed, the effort, after a decree has

been entered and a commissioner has reported, to change the material effect of such pleading should not be permitted. There is also another obstacle in the way of granting such relief to claimant.

The decree was a "consent decree" based on the pleadings and was entered almost six years ago. The refusal of the court of admiralty to look with favor upon such applications in regard to such decrees is indicated in the recent case of The Amaranth (U. S. v. 885 Cases) (C. C. A. 2) 68 F.(2d) 893; decided January 15, 1934.

Claimant presents no reason for the granting of such relief except that it has now an opinion of the commissioner on a subject which was not properly before him and which creates new hopes of ultimate success provided it can now avoid what it previously believed to be the true situation.

An examination of the record and the proceedings before the commissioner indicates that claimant has had ample opportunity to promptly correct its pleading prior to the entry of the consent decree and the hearing before the commissioner.

As early as December 12, 1925, depositions were taken on behalf of libelant, at which the claimant was represented, and the witness "Camerci" testified that he saw the tugboat and the elevator come alongside the steamer and "he broke the propeller when he came in."

"Q. Did you see the collision? A. Yes.

"Q. Which vessel hit the propeller of the Isonzo II? A. The elevator."

Counsel for claimant made no attempt to cross-examine this witness. This deposition, among others, was offered in evidence before the commissioner. Libelant's Exhibit 1.

It is apparent, therefore, that as early as 1925 claimant knew that libelant was relying with other evidence upon this testimony. Yet three years after claimant consented to the entry of the decree in question and has made no move to avoid its effect until this report of the commissioner was filed on June 5, 1934.

To be sure counsel for claimant argues that the admission in question in its answer was made on what was believed to be, at that time, the facts, but that it now finds, because of the opinion of the commissioner, that it was mistaken, and that the subsequent consent decree was based on the same mistake. But the proof in the case does not show any mutual mistake of law or fact, on the contrary, the libelant produced before claimant as early as 1925 a man who said he was an eyewitness to the very thing admitted, and this evidence was introduced at the hearings.

There appears from the record that libelant made a motion, on or about August 30, 1933, for a commissioner to take foreign testimony for use on the hearings for the computation of damage and that this was opposed by claimant. The motion was granted, and in connection with it the libelant urged before the court that any cause for damage resulting from other causes than the said collision was outside of the decree. As to this argument the counsel for claimant had notice as of August 30, 1933. Claimant nevertheless waited until the report of the commissioner was filed before making the motion before me.

Accordingly, in my opinion, with due regard to the liberality of proceedings in admiralty, this motion cannot be granted for the reasons above stated.

This brings us to the third motion before me, which is based on exceptions to the said commissioner's report.

The exceptions by libelant, filed January 10, 1934, are, in substance, that the commissioner failed to recognize the consent decree as determining the merits; that he improperly passed upon the merits; that he failed to ascertain and compute the damages as directed by the decree, etc.

The exceptions by claimant filed January 8, 1934, objects to the commissioner finding that libelant is entitled to recover costs.

In view of what has already been stated, the report of the commissioner is not in proper condition for consideration.

On January 31, 1934, through inadvertence, the report, etc., was submitted by the clerk to the court for consideration without any briefs or apparent objection appearing, due to some arrangement between counsel as to which the court was not reminded. Accordingly, the court consulted the records of this litigation in the clerk's office and found that the case was, on or about June 1, 1928, marked "settled." This entry is of course erroneous, as indicated by a later entry on June 28, 1928, of the consent decree.

However, owing to this confusion, the court assumed that the parties were no longer actively interested in the result, and, as the suit has been pending for years, the court felt that the report should be confirmed. No order was entered, and it soon developed that the parties were seriously contesting the matter.

Accordingly such previous decision of the court is set aside and the court has now duly

considered the briefs and other papers intended to have been submitted originally.

Aside from gross laches on the part of claimant in seeking to be relieved from admissions in the answer and consent decree which forbids the granting of the relief sought, there was testimony presented by libelant to claimant long prior to the entry of the consent decree expressly relating to the merits of the controversy and on which a claim for damages was properly based.

It has long been the practice in this district to refer only the details of the amount of the recovery; that is, the ascertainment of the amount of damage to be reported to the court. It has not been considered proper, without the consent of parties, to send the merits of a cause before a commissioner. The Bronx (C. C. A.) 246 F. 809; U. S. Willow, etc., Co. v. La Compagnie, etc. (C. C. A.) 271 F. 184; The Spica (C. C. A.) 289 F. 436; Benedict on Admiralty (5th Ed.) vol. 1, p. 485. The decree here made no change in this established procedure.

There was no consent here to a reference of the merits. On the contrary the question to be ascertained was solely the amount of damage sustained from the collision.

I understand the claimant to argue that certain paragraphs appearing in the report of the commissioner may now be considered by the court and the remainder of the report ignored. I do not approve of this practice. It tends to further confuse the record. I see no necessity therefor.

The proper way, it seems to me, to proceed, is to return the report to the commissioner with the request that he eliminate therefrom all improper findings and report on the question of damage referred. This does not mean the taking of new testimony. The commissioner may allow, if he or they desire, counsel to appear before him and re-argue the question of the amount of damage caused by the collision, admitted, and incorporated in the consent decree. When this has been done and the new report of the commissioner filed, the exceptions thereto, if any, may be brought on for a new hearing in the usual way. If the commissioner desires to take further testimony, he is free to do so, but, in view of the fact that this suit has been pending for nine years, the necessity of avoiding further delay is quite apparent.

The matter is referred back to the commissioner for further proceedings in accordance with the opinion.