THE STJERNEBORG.
SIGNAL OIL & GAS CO. OF CALIFORNIA
v. DAMPSKIBSSELSKABET
DANNEBROG.
THE BRAND.

SIGNAL OIL & GAS CO. OF CALIFORNIA
v. AKTIESELSKABET BORGESTAD.

Nos. 7331, 7334.

District Court, W. D. Washington, S. D.
Dec. 7, 1938.

John S. Robinson and Fairbrook & Williams, all of Seattle, Wash., for libelant in both causes.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for claimants in both causes.

CUSHMAN, District Judge.

The stipulated facts show that the oil was furnished upon the credit of the vessels and that, in consequence, the asserted liens were created. The South Coast, South Coast S. S. Co. v. Rudbach, 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386; Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1–10, 41 S.Ct. 1, 65 L.Ed. 97, citing with approval The Bronx, 2 Cir., 246 F. 809; The Golden Gate, 9 Cir., 52 F.2d 397, certiorari denied Knutsen v. Associated Oil Co., 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576; The Luddco 41, 9 Cir., 66 F.2d 997; The Portland, 9 Cir., 273 F. 401; The Astorian, 9 Cir., 57 F.2d 85–89 et seq. See, also, The Everosa, 1 Cir., 93 F. 2d 732; The Palnatoke, 1934 A.M.C. 936.

An alternative defense asserted in each case is that the acceptance, in July, 1934, by libelant from charterer of a pledge of certain collateral to secure payment for the oil furnished and the release by libelant of the excess realized therefrom after satisfaction of the senior claim of libelant's co-pledgee constituted a waiver, if it existed, of the asserted lien. The pledge agreement provided: "Nothing herein contained shall preclude the pledgee from collecting on any indebtedness or obligation hereby secured without resorting to said collateral. Nothing herein contained shall constitute any release or waiver of any lien which Signal Oil and Gas Company, a Delaware corporation, may have on or against the vessels hereinabove described for fuel oil supplied to such vessels."

No interest in the pledged collateral upon the part of claimants or respondents is shown. No intervening rights are involved. The owners are not shown to have relied upon this pledge or to have known of it. This transaction did not constitute a waiver.

A further alternative defense asserted is that libelant, by agreeing in August, 1934 not to enforce prior to September 1st, 1935 payment for the oil by charterer (from which agreement libelant was by charterer released in April, 1935) waived any lien which might exist.

This agreement provided: "This agreement is signed by Signal Oil and Gas Company with the understanding that nothing therein contained shall constitute any release or waiver of any lien or the right to a lien which Signal Oil and Gas Company, a Delaware corporation, has or may have on or against any vessels for supplies furnished said vessels, or any of them, while said vessels, or any of them, were entrusted to the management of the debtor named in said agreement, provided, however, that Signal Oil and Gas Company agrees not to enforce such liens against any of said vessels for the period this agreement is in effect unless and excepting enforcement is necessary to prevent the loss of said lien rights by destruction, sale or other disposition of said vessels, or any of them."

No intention upon Libelant's part to waive its lien is shown by this transaction nor did it amount to laches.

In the case of the Stjerneborg, No. 7331, a further alternative defense or partial defense has been interposed, Claimant alleging: "A–II. That the diesel oil so furnished on or about May 14, 1934, at the port of Astoria, state of Oregon, by libelant to said motorship was not a lienable necessary since, when ordered and received, it was not essential to the voyage then contemplated by said motorship, but was desired by the charterer merely to comply with its obligations under said charter party."

In this matter the facts stipulated are as follows: .

"(9) That under said contract libelant caused to be delivered to the vessel 'Stjern-

eborg', on the order of W. L. Comyn & Sons, a quantity of fuel oil at Astoria, Oregon, on or about the 15th day of May, 1934; that this quantity of oil was ordered by W. L. Comyn & Sons in letter dated May 1, 1934, reciting that 'the M/S Stjerneborg which is at present on our time charter will be loading a cargo of lumber *to China and Japan* about the middle of May at Grays Harbor', and requesting delivery of oil at Aberdeen (Copy-Ex.H-2); that to this letter libelant replied by telegram, dated May 7, 1934, suggesting oil delivery at Astoria (Copy-Ex.I-2); that by letter of May 7, 1934, W. L. Comyn & Sons acquiesced in libelant's suggestion for oil delivery at Astoria (Copy-Ex.J-2); that W. L. Comyn & Sons notified libelant of the arrival of the vessel at Astoria by telegram dated May 14, 1934 (Copy-Ex.K-2); that by letter dated May 14, 1934, libelant acknowledged advice from W. L. Comyn & Sons as to the arrival of the vessel at Astoria for oil (Copy-Ex.L.-2); that on May 15, 1934, delivery receipt was signed by the chief engineer and the master of the vessel (Photostatic copy-Ex.M-2), and later libelant issued its invoice for $3824.65, addressed to 'MS Stjerneborg and Owners, C/o W. L. Comyn & Sons, 427 Colman Bldg., Seattle, Washington' (Copy-Ex.N-2).

"That said delivery as evidenced by said delivery receipt (Ex.M-2) and by said invoice (Ex.N-2) in the sum of $3824.65, constitute the claim in suit, upon which libelant seeks recovery against the respondent vessel 'Stjerneborg'. * * *

"That said 'Stjerneborg' charter party also contained the following clause: "13. Quantity of bunkers on delivery as on board. Bunkers on redelivery not less than 400 tons."

"(11) That as a result of a strike of longshoremen, effective in most ports of the Pacific Coast, few vessels loaded or discharged cargo, and few vessels moved in commerce from the *middle of May, 1934,* to the end of July, 1934; that partly in consequence of this condition, W. L. Comyn & Sons became financially embarrassed, and gradually delayed from time to time in making payments to libelant for oil bought under said contract."

"(16) That the quantity of oil on board the vessel 'Stjerneborg' at the time of arrival at Astoria, Oregon, on May 15, 1934, prior to receiving oil then and there from libelant, was 91 tons, as shown by statement of the master dated May 23, 1934 (Copy-Ex.V-2).

"That the quantity of oil received by the vessel 'Stjerneborg' then and there was 501 tons, as shown by abstract of log, certified by the master and first officer (Copy-Ex. W-2).

"That on or about July 5, 1934, at Vancouver, B.C., the vessel 'Stjerneborg' received 69.82 tons of oil—such quantity, however, not being supplied by or for libelant.

"That the quantity of oil remaining on board the vessel 'Stjerneborg' on August 15, 1934, upon her redelivery under the then current charter party by W. L. Comyn & Sons as charterer to the owner *at Sydney, Australia,* was 402 tons, as shown by statement signed by the master and first officer of the vessel (Copy-Ex.X-2) and as shown by certificate of redelivery signed by the master and Comyn, Smith & Company, Agents for W. L. Comyn & Sons at Sydney (Copy-Ex.Y-2)."

(Emphasis, the Court's.)

The foregoing fails to show that the oil furnished by libelant was other than necessary to the voyage then contemplated.

The Decree, in each case, will be for Libelant with interest and costs, which decrees, together with any orders based upon the foregoing rulings, will be settled upon notice.

The Clerk is directed to notify the proctors for the parties of the filing of this decision.